Our second case for today is No. 221111118 PRN Real Estate & Investments, Ltd. v. William You have Mr. Levitt for the appellant, and, sir, you've reserved three minutes for rebuttal, is that correct? Yes. May it please the Court, Peter Levitt and Daniel Nordby representing the appellant PRN Real Estate & Investments. The bankruptcy court's decision should be reversed. The bankruptcy court granted a discharge to a dishonest debtor. He committed homestead fraud, engaged in a fraudulent transfer scheme. He concealed shareholder loans, and he intentionally failed to disclose an entity that shortly before the bankruptcy case had made $4 million in fraudulent transfers, and yet he still was discharged. All right. I want to start with the Husky counts, and let's talk about the Douglasville and RACN notes. At what point did Cole individually become responsible for those notes? Was he on the original notes back in 2003? Did he assume the debt as a guarantor in the 2008 settlement agreement? Because my understanding is you sued him. What led to the transfers, according to the record, is you sent him a letter in December, and it lists both of those notes and some others as things that he has not satisfied, that he has not paid off pursuant to the memorandum agreement. So was he liable for those loans at the time or those notes at the time that you sent that letter? He was, but he wasn't the only one liable. There were multiple obligors on those notes. So what is the answer to my question of when did he first become liable? Was it all the way back in 2003 and 2004 when the notes were signed, or was it 2008? It was in 2003 he became liable to the bank, which was SunTrust Bank. He became liable to my client, PRN, when she paid, when PRN paid SunTrust Bank. In 2011. Okay, here's why I asked the question. The statute only allows the discharge, excuse me, not the discharge, 523 only allows you to avoid that debt if the debt was obtained by the fraudulent act. Under Husky, the fraudulent act you're talking about is the transfer of money from Coal of Orlando to Coal individually. The problem for you is you've already just admitted he had obtained that debt back in 2008 and 2011. So he didn't obtain the debt by receiving the money from himself in the tenancy by the entirety. He obtained it years earlier. You don't obtain something twice. So how do you get around the fact that you've already acknowledged he had obtained the debt before the transfer, and you have, in fact, sued him because he was already liable for it before the transfer? Judge Mays, I think I can answer that question. He was liable for his own debt before the transfer. He was not liable for Coal of Orlando Limited Partnerships debt. But you have, in those lawsuits and in this lawsuit, you said he was the alter ego, so he was liable for Coal. He wasn't liable for Coal of Orlando Limited Partnerships debt until he committed the fraudulent acts of moving funds from that entity to tenants by the entirety's accounts that he shared with his wife. When he did that, he then became liable not just for his own debt. He originally was liable only for his own debt. But after he committed those acts, he became liable for another entity's debt, an entity that he controlled. And that entity owed PRN money for contribution under joint guarantees, and PRN had already made a demand on that entity for payment. Are you saying that the debt that Coal of Orlando owed PRN was separate and distinct from anything that Coal owed PRN under the settlement agreement of OA? Absolutely. All right. Yes, sir. So let's assume then, and so you're saying that the demand letter you sent in December had nothing to do with the debts that Coal of Orlando had. A separate demand letter was sent to Coal of Orlando Limited Partnership. My client, PRN, was going to collect against that entity. That entity owed money. That entity had $4 million in its accounts at the time. It would have been fully collectible. Coal, controlling that entity, makes a decision to take the money out of that entity. He strips the money out. He therefore became liable for that entity's debt, which he was not previously liable for. So where do you find his personal liability? Where in the Florida statute makes Coal personably obligated to pay for Coal of Orlando simply because he received the money? Because when this court in Gaddy rejected a very similar instance, it looked at Alabama, which was also under the Uniform Act, and said that there was no personal responsibility for the debt when the person accepted it. I think we all know that transfer liability isn't available. And I understand your point. You're only saying that when he received the money, he took on that debt. But what under Florida law says that the recipient of a fraudulent transfer, that you have some action for damages, that you can get money from that person? Well, section, there is a fraudulent conversion statute, Section 222.11, I believe it is, which has a catch-all provision that the court can grant any relief it deems appropriate. And in our mind, you can have liability for both the transferor and the transferee. But that's exactly the same statute, almost word for word, that Alabama had. And in Gaddy, the court said that it didn't, or it said that it created a double recovery. Because even if you're correct, and I think you may be going a little far, but even if you're correct that other relief allows that, you've still got, as you said, you still have a lawsuit against Coal of Orlando and other lawsuits to get the debt in another way. I'm just trying to see how you get around the Gaddy problem that all this has been dealt with. In count three of our third amendment complaint, we allege very clearly alter ego liability under both Florida law and Nevada law, because it was an issue about choice of law. But we clearly allege that we were relying on alter ego, and we've cited case law that if there is a finding of alter ego, the person who controlled an entity can be liable for a fraudulent transfer that they caused the entity to make. They take on that liability. It's really no different than the Husky case. The only difference is in Husky, there was a Texas statute that has been viewed as a, been described as a veil-piercing statute where a director or shareholder who does the exact same thing can be liable under the statute. But we have alter ego law. Can you tell me specifically what paragraph of the complaint you're referring to when you say that you specifically allege alter ego liability? Yes. In count three of the complaint, it's mentioned several times. Let me see if I can find it for you. Looks like 97. You say Cole is the alter ego of Cole of Orlando. Right. When you're talking about Florida. Yes, we do. And then we have alter ego allegations throughout count three. In the same sentence, you say because Cole of Orlando was created for an improper purpose and is a sham entity. Two or three times in that complaint, you say that we should treat them as a sham or the court should treat them as a sham entity and that it was always Cole. If that's correct, if you are correct that Cole has always been the alter ego of Cole of Orlando, then he obtained Cole of Orlando's debts from the very beginning, which he didn't obtain it when he received these transfers. If you're correct that he's always been the alter ego, then he had these debts long before. And again, the scheme sounds terrible, and the courts below have found that he did it to hide the money. But the question is, when did he obtain the debts? He becomes an alter ego when a court determines that he's an alter ego. And that's what we were seeking the court to determine. The court never reached those issues. The court never decided that he wasn't an alter ego. In fact, in a separate opinion in the fraudulent transfer case that the trustee brought, the court made findings in that case that would support an alter ego liability. But he's not an alter ego until a judge determines that he is. We wanted the opportunity to prove that. This was decided against us on summary judgment, but really was just deciding that the complaint was insufficient. It wasn't. It was sufficient. If we gave you the opportunity, at what moment would you say that he became the alter ego of Cole of Orlando? Based on what you've pleaded, when did he become the alter ego? When he stripped Cole of Orlando of those assets. He exposed himself to liability as an alter ego. And that's something that we have to prove in court. It's a factual matter. We never got there. We want you to reverse so we have the opportunity to prove those facts based upon his actions in stripping that entity of cash, knowing that my client was trying to collect against that entity and had already made a demand. The idea is that they were legally separate before. And then when he took those assets for himself but for no purpose related to the business, then that's when he became the alter ego by virtue of those wrongful acts? When he incurred the liability as an alter ego. He has to — you have to commit a bad act to be an alter ego. You know, just having control of a company is not enough. You have to do something to expose yourself to that liability. And the bad act he committed was a fraudulent act in stripping that, rendered that entity judgment-proof. And he controlled it when my client was trying to collect. He should be determined to be an alter ego. We need the opportunity to prove that. I have very little time left. I'd like to shift very quickly to the Homestead issue, if I may. Homestead. This is a very strange case because we had a Homestead litigation with a trial where he was found to have lied in his schedules, to have attempted to manipulate his Homestead, to gerrymander his Homestead. The trial court found that was a species of fraud, that his excuses for why he split the lot were false, that he lacked credibility. Those findings were made in the bankruptcy court. Then Mr. Cole appealed, and he went to the district court. And the district court affirmed those findings. And he appealed to this court, and this court affirmed those findings. So we have findings of fraud, Homestead fraud, committed by Mr. Cole, affirmed by this court. There needs to be a remedy for that. The problem, though, that you don't have — I mean, I agree for what it's worth. I find his conduct outrageous. But isn't the problem that you have a finding of fraud, not a finding of concealment? And isn't the pleading that he concealed the property rather than that he fraudulently sliced it up? Concealment and false oath. What piece of property do you say he did not put in the schedule? What did he actually hide by not putting it in the schedule? He hid the non-exempt — he hid the non-exempt portion of his homestead property by trying to create the false impression that the entire property was exempt. And after he did that, he lied about his reasons for doing that consistently. Still in the schedule, correct? The lower courts found that he put it in the schedule, and he told the trustees how he had divided it. So he may have concealed information or had been shady in what he was doing, but he actually put it in the schedule. Putting it in the schedule is not enough. If I put a piece of artwork in there, and I say it's a 1937 painting bought at auction in France, unknown value, and it was a Marc Chagall, and I don't disclose that, and it's worth millions of dollars, I have concealed the material fact. You concealed information, but you didn't conceal the artwork. I can still see the artwork, and I, as the art critic, can say, I know you're telling me a lie about what it is. I can see it. In the same way that the trustee, as long as you put all of the property in and you don't conceal the property itself, the trustee can say, these shouldn't have been separated. — painting, but he also concealed the nature of the property, concealed material facts about the property, and the actual existence of the property. There was never two properties. He listed two properties as parcels. That's a false statement. — I agree with you, and I agree with Judge. It is shady. It has been fraudulent. The question is, did he conceal it? — also alleged in Count 11, and we incorporated prior allegations. Paragraph 161 alleges these same things as false oaths. It specifically pled in Count 11 of our complaint. We did both. We both alleged concealment and false oath. It has to be one or the other. In this case, it's probably both. I'm out of time. — Well, I think you're on our time, if it's okay with our presiding judge. So tell me specifically in 161 what alleges false oath. — All right. All right, looking at 161 right now, said he was marketing the property as if no parcel had been split. He described the property in his bankruptcy, only in his bankruptcy schedules, as the debtor claimed there are two distinct parcels. The debtor has been unable to provide a rational reason why he split the property. At one point, he claimed the city of Maitland required it. That claim was shown to be untrue at the Homestead trial. Subsequently to making that false claim, at his 2004 exam, the debtor claimed the reason he split the lot was because he was concerned about liability of a ski course. That was an untrue statement, too. During the Homestead trial, he changed his story again, claiming he didn't own the lake bottom at all, that the State owned it. That was a false statement. So all of these things are false statements. — But one thing you never read off there was the words false oath. How do you put the court and the other party on notice that you're bringing a false oath claim if you don't say he provided a false oath? I mean, on any minimal pleading standard, you should say this is what the claim is. — In paragraph 211, has a general allegation that he knowingly and fraudulently or in connection with this case made multiple false oaths. We use the word false oaths, and we refer back to earlier allegations. Now, in hindsight, we could have repeated those factual allegations in Count 11, and maybe in hindsight, that would have been clearer, but we don't have to do that because we incorporated by reference the — — Where do you say in paragraph 211 that he had a false oath? — Paragraph 211, the debtor knowingly and fraudulently or in connection with this case has made multiple false oaths and accounts, including failing to include all assets in his schedules and SOFA while testifying under oath that they were accurate. And then, you know, and that's another thing. He testified — — No, keep reading because I don't see anywhere in there that you said he provided a false oath with regard to the homestead. You've got four subcategories, but none of them say homestead. — It doesn't, but it incorporates by reference paragraphs 134 to 200, and paragraph 61 is all about the homestead. — Because this is false oath, which is a form of fraud, does Rule 9b pleading standards apply? — I don't think so. This isn't a fraud claim. It's an objection to discharge. I'm not aware of any 9b cases that apply that to objection to discharge litigation. — As you can probably tell, this is a sensitive topic to me because when you're a district court and counsel or pleadings hide what the actual claim is and they're not really revealed until later, it becomes very problematic, particularly when they're not revealed until the circuit level. And I just, I don't understand how you can say you pleaded false oath for homestead when that's not in the count. — It's in the count by incorporation by reference. — Okay. — I have one last question, if I may. On the returning back to the, to the transfer issue, isn't, isn't the more clear way to bring this claim that the trustee was deprived of that $4 million? And I can't understand why that was settled for $350,000. Maybe you or your friend at the other table can explain that. But isn't that really the most straightforward way that that mess was supposed to be cleaned up? — The trustee was deprived of the funds and there was a settlement. But the claim that we're pursuing here is not a claim for his personal liability. It's a claim for a non-debtor entity, Kohl of Orlando Limited Partnership, that he controlled. The trustee doesn't have that claim. The trustee is not a trustee of that entity. That entity was not in bankruptcy. The claim is against that entity. He became personally liable for that claim. That's not something the trustee can sue to recover. The only one that was injured by that is PRN. The estate wasn't injured by it. PRN is the only party that was injured. It has a unique claim because it was owed money by that other entity. Nobody else was. So the two claims are similar, but they're very different claims. — If that's true, then how did the settlement come about anyway, if that was actually completely separate from what was owed to the trustee? — The settlement came about through negotiations, but I want to point out, Your Honor, that PRN's claim was not resolved by that settlement. In fact, there's a specific exclusion in the settlement motion itself, reciting the terms that says this in no way settles PRN's claim in this case or in the pending appeal. That was carved out of the settlement. — That's assuming, and I don't know that I've seen any court that has said, is there any preclusive effect of a trustee avoiding a fraudulent transfer under 548 and 550? Is there any preclusive effect from a creditor coming in under 523 and trying to essentially void the same fraudulent transfer under a Husky? — Well, Your Honor, it's not the same transfer. And I think what I need to make clear is the debt we're seeking to recover under the Husky claim is not the $4 million. It's just the liability that Coal of Orlando Limited Partnership had. That liability under two promissory notes based on a contribution is about $1 million, okay? So we limited the claim to Coal of Orlando's liability under those two notes, for which Coal became liable as an alter ego. It's a different amount. It's a different claim we have standing because the trustee was not injured by those actions. Only PRN was injured. We're not going to seek a double recovery here. I mean, if Mr. Coal thinks he's paid twice, he can raise that. But that's not what we're looking for. — Have you sued Mr. Coal for those particular debts that you're talking about? — All of the guarantors were sued in state court. There were others as well. — For these deaths that you say he assumed as an alter ego when he transferred and received the Coal of Orlando money, have you sued him in state court to recover that money, which used to be a debt that belonged to Coal of Orlando, but now you say belongs to Coal individually? — I don't know if we alleged in state court the alter ego claim. I don't know the answer to that. — It's an 1,800-page complaint, which means I haven't had time to get all the way through it. — One of my state court colleagues would probably know, but I don't know. I can't answer that. — Mr. Lovett, you are answering our questions, so you've retained your three minutes for rebuttal. — Thank you. — Mr. Thompson. — Good morning. My name is Chris Thompson. I represent the appellee, Mr. Coal. I'd like to start with the Husky issue that Your Honors are interested in today and respond directly to what Mr. Lovett just said, that PRN is seeking a judgment related to the equitable contribution claim liability. The problem with that argument, as the district court pointed out, is it's a post hoc reinterpretation of what's actually alleged in the Third Amendment complaint. What PRN has alleged and what it says it's seeking in the Third Amendment complaint, and here I'll point Your Honors to paragraph 95 in count three, is that the debtor, quote, should be held liable for Coal of Orlando's fraudulent transfers caused by the debtor. That allegation and that demand is repeated in paragraph 106, where PRN alleges and demands that based upon the foregoing, plaintiff seeks a declaration and determination that the entirety of the amounts transferred by Coal of Orlando as part of the conversion scheme be deemed non-dischargeable. Now there is a parenthetical in there limiting it to the equitable contribution claim liability that Coal of Orlando allegedly owes, but it's clear from the pleadings here, Your Honors, that PRN believes Coal of Orlando incurred a new obligation to PRN when it made or when its assets were transferred as part of this fraudulent conversion scheme, and that goes directly against what this Court has held in Gaddy. Well, I think we said earlier, nobody is, I don't believe, thinks that Coal of Orlando as the transferor company incurred a new debt. The question is when, and I didn't get to ask this question because I didn't think about it at the time, when the coal tenancy by the entireties received the money from Coal of Orlando, did they receive along with the money, did they receive Coal of Orlando's debt? Because they are correct that Husky says that is a viable theory. In fact, when Husky went back on remand, that theory prevailed. The question is when was the first time that Coal individually took on the debt of Coal of Orlando under the equitable contribution? In other words, at what point was he liable to pay back PRN part of the money that it had to pay SunTrust for these two notes? Your Honor, as pleaded, he became liable, he was always liable because according to paragraph 95 and 97, Mr. Cole has always been the alter ego of Coal of Orlando. That goes to Your Honor's point earlier in your discussion with Mr. Levitt. The way the complaint is pleaded is that Mr. Cole was always the alter ego of Coal of Orlando, that it was set up as some sort of sham entity and that preserving the distinction between Coal of Orlando and Coal would somehow further an injustice against PRN. What is your position? You represent Coal. Yes. So you speak for Coal. At what point did Cole individually become liable for Coal of Orlando's debt to PRN? He has never become liable. Under the memorandum agreement, not under the forbearance agreement, not under an alter ego. At this point, you say he is still not liable for Coal of Orlando. Never held that he is the alter ego of Coal of Orlando, responsible for its equitable contribution claim. But I think their point would be they should get to have a trial to prove that he was the alter ego. So that we have, we being that the courts below have foreclosed their opportunity to prove that. Yes, I understand their point. But as pleaded, they should not have the opportunity to prove that Mr. Cole, as the alter ego of Coal of Orlando, is liable for a fraudulent transfer obligation. And that is what they've alleged here. But let's say, let's say that the facts were a little bit different. Let's say that Mr. Cole, instead of giving the money to himself and his wife and this tenancy of the entirety of his account, let's say that he had given it to his sister, right? A completely separate entity. Just, I love you sis, here this is in your trust. Would the sister be responsible for the debt? Which debt, Your Honor? The Coal of Orlando debt to PRN. In a similar setup to Husky. Would the sister have incurred that liability? As the recipient of a fraudulent transfer, and under the fraudulent transfer statutes, the sister would be liable, if the transfer was avoided, for return of the property or the value thereof. So under the fraudulent conveyance statutes, yes. So why would we make it? You would say not under Husky. You would say under the trustee could come after it. Correct, yes. A trustee, if the transfer was of Mr. Cole's assets to a third party, this would just be a routine fraudulent transfer avoidance action, yes. Tell me what's different about MyHippo versus Husky. Well, I'm not sure who the debtor is. Well, the debtor in your hypothetical is the transferor. Yes. A debtor does not incur additional fraudulent transfer liability for making a fraudulent transfer, and that's what this court addressed in cash. Yeah, I think to make Judge Grant's hypothetical fall within Husky, the sister would have to receive the funds, and at some point later, she would have to become the Chapter 7 debtor. Yes, and that's like the Seventh Circuit case in McClellan where that's exactly the setup. Right. A brother and sister conspired to fraudulently transfer assets away from the brother into the sister. The sister then filed Chapter 7, and the difference there is a Chapter 7 trustee has no claim to recover fraudulently conveyed funds because they weren't estate assets that were transferred, and so the creditor had its own freestanding fraudulent transfer claim against the sister that the Seventh Circuit said met the 523A2A exception to discharge. So why is this different? This is different, Your Honor, because Mr. Cole transferred his asset. The bankruptcy court in the fraudulent transfer action specifically found that Mr. Cole fraudulently conveyed his assets, that he was the transferor under the control test, and therefore the Chapter 7 trustee had fraudulent transfer avoidance actions that it pursued and recovered on. But do you avoid the meaning of husky by being both the transferor and the transferee? Is that really correct? It's not necessarily, Your Honor. Again, my argument is heavily premised on the way Count 3 is pleaded. It is pleaded to avoid, and for a judgment, a non-dischargeable judgment based on some new liability that Cole of Orlando incurred when the fraudulent transfers were made. It just simply... So let's say, you're right, there may be issues with the pleading, but let's set aside the pleading and let's figure out how theoretically these claims could be pleaded, right? Should there be a way to avoid liability that, say, the sister had in McClellan just by transferring it to yourself rather than to your sister? And is that a real difference? Set aside what the pleading did here, but is that a legal difference that has import? Well, the first point I would make, Your Honor, is you're not avoiding liability. Mr. Cole didn't get away with anything here. He was pursued by the Chapter 7 trustee and the transfers were avoided. On summary judgment, Judge Shenneman, the trial court, held that he fraudulently conveyed these assets to himself and his wife and they were avoided. And then he subsequently settled that obligation. And I would point out, the settlement was $350,000 to the estate and the conveyance from Mr. Cole's company of valuable membership interest directly to PRN. PRN is the primary creditor in Mr. Cole's Chapter 7 bankruptcy case. It's filed proofs of claim over $30 million. It's the creditor that's most interested in Mr. Cole's discharge, obviously. The answer, however, to Judge Grant's hypothetical question, yes. There is at least some set of facts in which a person can, as a quasi-transfer or push money from one of his accounts to a different one as the transferee and at that point be Husky liable in his role as transferee. If, and again, this is why I keep coming back to this question. If, in addition to obtaining the money, he obtained a debt that came with it. Because again, that's what the statute says. You have to obtain a debt for money. Correct. And that's why I keep harping on when did Cole individually obtain this debt? And you say he never obtained it. He has never obtained it. A court would have to find that he was the alter ego. When you say that, it makes it sound like it needs to go back for a trial to see whether or not he was the alter ego. Only if you find that they've pleaded a viable cause of action. So you would say if we find that Count 3 meets the pleading requirements for a Husky claim that it should go back for a trial on alter ego. I know you're going to say it doesn't meet those. But if it did, if we found that it did meet those, then the question would be alter ego liability. Right? So now tell me why you think Count 3 doesn't allege transferee liability. It clearly does not allege transferee liability. There's no, there's no reference to avoidance of the fraudulent transfers. There is only reference to Mr. Cole causing the fraudulent transfers. And again, I'll point to paragraph 95. The debtor should be liable for Cole of Orlando's fraudulent transfers caused by the debtor. In paragraph 97, if it is determined Florida law applies, Cole is the alter ego of Cole of Orlando and liable to PRM for the fraudulent conversion scheme. Let me read, the closest I think they get is paragraphs 103 and 104. 103 says by causing Cole of Orlando to make the second T. Cole transfer and the transfers involved the fraudulent conversion scheme. So you've set up everything that happened. The debtor obtained debts, that is Cole individually obtained debts owed to PRN, which are the subject of this count against the debtor. Isn't the phrase the debtor obtained debts saying that the transferee, that being Cole, obtained the debt when he caused the money to be sent to himself. Isn't that what a Husky claim is? It is obtaining a debt when you take on money. I know it could be clearer, but is that not what it is saying? Not exactly. The difference between this and Husky is, remember, the debtor in Husky didn't actually receive the funds. His affiliates did. Perhaps a distinction without much difference. But in this case, Cole didn't either. The tenancy by the entirety did. Yes. The difference is the Texas statute, which is a very heightened, strict, veil-piercing statute that requires proof of actual fraud to committed against a specific creditor, made the debtor in that case specifically liable for pre-existing contractual debts. And that's what makes me go back to the question I asked earlier, which is, is there anything in Florida law that is similar that would make Cole individually liable for the debt of Cole of Orlando when he takes it in? Husky's different because Texas has a different statute. My reading of Gatti, and I'll go back and read it again, is Alabama, which has the uniform, doesn't necessarily have the same type of statute as Texas in that it doesn't say you are individually liable upon receiving this fraudulent transfer. Is Florida more like Texas? Is it more like Alabama? What does Florida law have that addresses the situation of whether you obtain a debt when you're the recipient of a fraudulent transfer? Just to be clear, the Texas statute is not under the fraudulent conveyance or fraudulent transfer statute. It's a corporate liability issue. Florida has the uniform fraudulent transfer act, similar to Georgia, and there's nothing that speaks to this issue. It would really be just common law alter ego liability that may or may not rise to the level that's required under 523A2A of actual fraud. And I would point out that our position is Nevada law applies because this is a Nevada limited partnership, and under Nevada law, as I point out in our briefs, proof of actual fraud is not required to hold or to pierce the corporate veil and impose alter ego liability. The crux of imposing alter ego liability is that there would be some injustice if the separation between shareholder and corporation were upheld. And so it would be an open question whether even finding that Mr. Cole is the alter ego Cole of Orlando meets the actual fraud requirement under 523A2A. Isn't there an argument, so based on paragraph 97 of the complaint, and this goes back to something that Judge Mays was asking Mr. Levitt earlier, there's the allegation that Cole of Orlando was created for an improper purpose and is a sham entity created to avoid creditors. Do you have an argument that that allegation is actually inconsistent with the idea of transferee liability? Because it's saying that from the outset there was this alter ego problem, to not that it was a new debt that was created by the transfer. Yes, there is an argument there. We didn't clearly enunciate that in our papers, but your point is well taken. If he was the alter ego, he's always been the alter ego. And the debt, recall, is an equitable contribution claim theory. Cole of Orlando and Cole never received any money from PRN that gave rise to this alleged equitable contribution claim. What happened is Mr. Cole, Cole of Orlando and PRN, among others, were co-obligors to a bank. PRN settled the co-obligations, the obligations of all parties, by paying $3 million to the bank. PRN under state law then has a right to turn around and ask the co-obligors to chip in for their equitable share. So there was no money ever obtained from PRN by either Cole of Orlando or Mr. Cole. And he's always been liable if he's for Cole of Orlando's equitable contribution claim debt if he has found the alter ego. And that debt was just not incurred by fraud. I see I'm over my time. So under that view, PRN could still sue Cole as an alter ego for his liability for the Cole of Orlando debt? I'm not saying you can see that he would win, but they could. They could start a proof of claim for that, which they haven't. They've not. So they've not sued Cole individually for the, the lawsuit over this equitable contribution claim is solely PRN versus Cole of Orlando? Well, no, it's PRN versus everyone. Including Cole individually. That which means if that's and again, the complaint is so long, I just haven't had a chance to get to it. But when we do, I would assume at some point PRN said Cole became individually liable because of some triggering event. Either it was the original note he was a guarantor or at some point the settlement agreement or the forbearance or the forbearance was after the transfer. But what I've been trying to figure out is at what point did Cole individually become liable for the money that PRN had to pay SunTrust? And Your Honor, I apologize. I was not handling this matter in the state court. I'm not as familiar with the state court complaint. But I do know that the PRN has not filed a proof of claim based on this equitable contribution alter ego theory. One last thing before I'm done because I asked him the same question. Is there anything in the code or anything in case law that prevents simultaneous 523 creditor claims and 548, 550 trustee avoidances for the same transfer? In other words, PRN takes the position that just because the trustee received $350,000 doesn't foreclose our ability to get the remainder under 523. Do you see anything in the code or case law that says they're wrong? There would be two potential issues. I'm not saying it would be categorically prohibited, but there are two issues. One, recognized in GATI, which is the possibility of double recovery because, again, PRN was the primary beneficiary of the settlement of the fraudulent transfer action. And number two would be the statutory cap on a transferee's liability. A transferee is only liable up to the amount of the assets received or the indebtedness due to the creditor bringing the fraud. I think we'll ask Mr. Levitt, but I think their answer to that is all we're seeking is the amount owed minus $350,000, which if that's his answer, then I think he doesn't violate either of those things you just said. It depends what Mr. Cole actually received and what he gave up in his settlement. There's some math to be done and it was never determined because the parties resolved the fraudulent transfer action, but it was never determined what Mr. Cole's interest in the fraudulently converted funds was. That was an issue that the trial court reserved for trial, which never happened. Never. If you don't have any further questions, I'll sit down. Thank you. Thank you. I now have the answer to one of the questions that was asked about state court. We did not sue Cole as an alter ego to hold him liable for Cole of Orlando's debt in state court because we didn't discover those transfers until after Mr. Cole had filed bankruptcy and there was an automatic stay went into effect, so we could not bring it. You were precluded from doing it. We were precluded from doing so. We discovered it during the bankruptcy process. I think from the questions of Mr. Matthews, he almost admitted that we have the right to try to prove an alter ego claim, and he's saying that we haven't alleged sufficient facts to fit within Husky. I think that's his primary argument in count three, and I beg to differ on that. If you look at count three, we allege in paragraph 102 that the debtor, through his control of Cole of Orlando, caused the transfers to be made, and by doing that, he became liable for those debts. We allege in paragraph 103 that the debtor obtained debts owed to PRN as a result of the transfers. Judge Mays pointed out the language, the debtor obtained debts owed to PRN, and it hearkens back to earlier allegations about those transfers. We do make clear, although I think in hindsight it could be clearer, that we're not seeking just the $4 million. If you look at paragraph 106, it says there's a parenthetical in paragraph 106 that says, but not in excess of the amounts owed to PRN under the rank guarantee and the Douglasville guarantee. Those are referenced to the amounts that Cole of Orlando Limited Partnership owed for contribution under those two guarantees. So we limited our claim to that liability, which is different from the full boat. So we would ask the Court to review count three in detail again. I'm sure you have already, but look at it again. I'm confident that you will find that we did plead sufficient facts to fit within the exception in Husky. By the way, we read Husky more broadly, and we're aware of the Gatti decision, but, I mean, from our standpoint, any time a fraudulent transfer is made where the transferor actually obtains the benefit of the funds or control of the funds, it should be non-dischargeable under 523A2, even if he did originally owe the contract debt. Okay, but that's not what the narrow facts of Husky involved. I'm going to, before you sit down, I think you correctly heard him say that it was possible to have an alter ego trial, but I think Judge Pryor's question is the same one I had, which is, do you plead alter ego theory in the complaint as saying that he has always been the alter ego from the inception of Coal of Orlando? And if you prove what you pleaded, that he was the alter ego of Coal of Orlando, then he personally incurred all of Coal of Orlando's debt starting in 2002 when he created it, which means he would obtain these debts not because of the fraudulent transfer, but because he was always Coal of Orlando. So you would still lose, you would be for, not that you would lose in the general landscape of litigation, you just wouldn't have a 523A claim because you couldn't meet the requisite the debt was obtained by the fraudulent act, i.e. the fraudulent transfer. Mr. Mays, I understand the question perfectly, but I think there's a straightforward answer. Alter ego liability does not arise simply through a party's control of a company. I could be the director, president, and major shareholder of a company, and I don't have alter ego liability for that company's debt. I've got to do something wrong. I have to commit tortuous conduct or fraudulent conduct that hurts a creditor. That's when I get the alter ego liability. It does not arise simply because I own the company, control it, and I make all the decisions. There's a separation of the corporate form from the individual. The individual is presumptively not liable. You need to have all those factors, the control factors, but you have to have the wrongdoing as well. The wrongdoing was when he stripped Coal of Orlando of those assets. That's the act that gave rise to his alter ego liability. We have to prove all the other facts as well, but the critical fact where our claim accrued is when he made those fraudulent transfers. And allow me to break it down to the most basic level of what you are seeking. So you're saying that Coal of Orlando owes still PRN $750,000 once you subtract the $350,000 through the settlement. So that's ultimately what you're seeking in this count. Am I correct about that? Well, our claim was for a million. As far as whether he gets credit for the $350,000, he may be able to assert that. We haven't really. $50,000, sorry. Or whatever that $300,000 amount is. He may be able to assert that he's entitled to an offset for that. That would be a factual issue that would have to be resolved on remand. But we realize that's out there. But our claim is for the exposure of Coal of Orlando as a contribution liability, which is about a million dollars. Got it. Thank you. Thank you. Court will be in recess until 9 a.m. tomorrow. All rise.